UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JENNIFER B.[1],

                                                Plaintiff,            Case # 19-cv-799-FPG

v.                                                                           DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                               Defendant.
_____

## INTRODUCTION

On July 17, 2014, Plaintiff Jennifer B. protectively applied for Supplemental Security Income under Title XVI of the Social Security Act (the "Act") and Disability Insurance Benefits under Title II of the Act, alleging disability beginning December 11, 2012. Tr.[2] 260-67. After the Social Security Administration ("SSA") initially denied her claim, Tr. 66-67, Plaintiff appeared, with counsel, at a hearing on May 24, 2018, before Administrative Law Judge Timothy Belford (the "ALJ"). Tr. 30-60. On June 29, 2018, the ALJ issued an unfavorable decision, finding that Plaintiff was "not disabled" within the meaning of the Act. Tr. 12-22. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 14. For the reasons that follow, Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED. The ALJ's decision is AFFIRMED.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only her first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 7.

[3] The Court has jurisdiction over this action under 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).

**LEGAL STANDARD**

**I.       District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.      Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 416.920.

**DISCUSSION**

I.  **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in gainful activity since the alleged onset date.  Tr. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: Fibromyalgia, hypertension, obesity, degenerative disc disease, degenerative joint disease, arthritis, and affective disorder.  Tr. 15.  At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment.  Tr. 15-17.  Next, the ALJ determined that Plaintiff retained the RFC to perform light work except that she could occasionally be exposed to extreme cold, balance, stoop, crawl, kneel, crouch, and climb ramps, stairs, and ladders.  Tr. 17.  Plaintiff would be further limited to simple, routine tasks with no more than occasional decision-making, occasional workplace changes, and occasional interaction with co-workers, supervisors, and the public.  Tr. 17.

At steps four and five, the ALJ concluded that Plaintiff was incapable of performing past relevant work as a prep cook, data entry clerk, secretary, cafeteria worker, and supervisor food checker, but there were jobs in significant numbers in the national economy that Plaintiff could perform, such as a package inspector, price marker, mail sorter, table worker, touch up inspector, or surveillance systems monitor.  Tr. 20-22.  Therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 21-22.

II. **Analysis**

Plaintiff advances two related arguments.  First, Plaintiff contends that the ALJ improperly evaluated the opinion from Plaintiff's treating mental health therapist, Kathleen MacRoy, LCSWR. ECF No. 9-1 at 14-19.  Second, Plaintiff argues that, while rejecting MacRoy's opinion, the ALJ improperly credited an opinion from non-treating, non-evaluating agency source, G. Kleinerman, M.D. *Id.* at 19-21.

**A.     The ALJ Did Not Err in Weighing the Opinion of Treating Therapist MacRoy**

On May 21, 2018, MacRoy completed a Mental Residual Functional Capacity Questionnaire, indicating that she saw Plaintiff every six weeks for approximately three to four years. Tr. 732. However, she acknowledged that she had not seen Plaintiff for over five months at the time she rendered her opinion. Tr. 732. MacRoy opined that Plaintiff was seriously limited, unable to meet competitive standards, or retained no useful ability to function in all but one area required to do unskilled work, effectively making her incapable of doing any such work. Tr. 734. For example, in a check-box format, MacRoy opined that Plaintiff would be unable to meet competitive standards in ability to remember, understand and execute simple directions, maintain attendance, work with others, get along with others, and perform at a consistent pace. Tr. 734. According to MacRoy, Plaintiff would have no useful ability to accept instructions and respond to criticism from supervisors or respond appropriately to changes in a routine work setting. Tr. 734. MacRoy further opined that Plaintiff had no useful ability to understand and remember detailed instructions, carry out such instructions, make goals, deal with stress, interact with the public, maintain socially appropriate behavior, adhere to standards of cleanliness, travel, or use public transportation. Tr. 735. In other words, Plaintiff could not do virtually anything required to maintain any job.

The ALJ afforded this opinion "partial weight" or "little weight," noting that a "social worker is not an acceptable medical source"[4] and that "the extreme limitations that Ms. MacRoy set forth are inconsistent with the claimant's treatment records." Tr. 20. The Court agrees with the ALJ's reasons for discounting MacRoy's opinion.

---

[4] The ALJ added that a social worker cannot "give a medical opinion deserving of weight." Tr. 20. Plaintiff takes issue with this classification, noting, correctly, that a social worker's opinion can be given weight but need not be given *controlling* weight. The ALJ clearly did not intend to intimate that a social worker's opinion does not deserve to be weighed at all because the ALJ *did* weigh the opinion and *did* give it weight, albeit "little weight" or "partial weight" because it was inconsistent with the record. Plaintiff's argument that the ALJ did not weigh the opinion is therefore unavailing.

The ALJ is correct that, as a social worker, MacRoy's opinion is not an "acceptable" medical source as defined in 20 C.F.R. § 404.1513(a), the regulation applicable at the time the claim was filed. However, as SSR-06-03P notes, "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,'" such as social workers, "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03P, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006). Opinions from these sources are not considered "acceptable" and are therefore not entitled to controlling weight. *Conlin v. Colvin*, 111 F. Supp. 3d 376, 386 (W.D.N.Y. 2015) (citing *Piatt v. Colvin*, 80 F. Supp. 3d 480, 493 (W.D.N.Y. 2015)). "However, the ALJ should consider information from 'other sources,' such as social workers, which 'may also help . . . to understand how [the claimant's] impairment affects [her] ability to work." *Krach v. Comm'r of Soc. Sec.*, No. 3:13-CV-1089 GTS/CFH, 2014 WL 5290368, at *6 (N.D.N.Y. Oct. 15, 2014) (quoting 20 C.F.R. § 404.1513(e)). Although the ALJ is "free to decide that the opinions from 'other sources' . . . are entitled to no or little weight, those decisions should be explained." *Piatt*, 80 F. Supp. 3d at 493 (quoting another source). Furthermore, an ALJ may not disregard a medical opinion solely because the opinion is from a nonmedical source. *Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 335-36 (W.D.N.Y. 2018). Like for a treating physician, "[t]he amount of weight to give such opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole." *Williams v. Colvin*, No. 15-CV-6119-FPG, 2016 WL 1466562, at *4 (W.D.N.Y. Apr. 14, 2016).

Although MacRoy maintained an extensive treating relationship with Plaintiff, treating her multiple times over several years, Tr. 732, the significant, nearly complete limitations she placed on Plaintiff's ability to function in virtually all mental health functioning areas are not supported by the record. Indeed, MacRoy's notes consistently demonstrated that Plaintiff had normal concentration,

5

alertness, memory, and thought process and content. Tr. 403, 404, 405, 406, 407, 464, 466, 473, 474, 476, 479, 480, 482, 580-81, 582, 584, 586, 588, 590, 685, 686, 688, 690, 692, 694, 696, 698, 700, 701, 703, 705, 707, 709, 710, 711, 713, 714, 716. MacRoy indicated that Plaintiff's grooming was normal, that she was "fairly articulate," with "fair judgment," no depression, and organized thoughts. Tr. 403. Most of Plaintiff's stressors centered around parenting and schooling her son. Tr. 479-80. This relatively normal description of Plaintiff stands in stark contrast to MacRoy's opinion that Plaintiff had virtually no ability to concentrate, follow any directions, make any decisions, follow any type of routine or schedule, handle any stress, or work with any co-workers or the public. But, importantly, MacRoy's treatment notes are completely *consistent* with the RFC while they are *inconsistent* with her opinion.

MacRoy's opinion is also inconsistent with—indeed an outlier to—the rest of the psychological opinion evidence in the record. The ALJ gave "some weight" to the opinion from state agency consultant C.W. Kang, M.D.—who opined that Plaintiff's mental health impairments were non-severe—because the ALJ found that Plaintiff's impairments were indeed severe yet not as limiting as Plaintiff argued. Tr. 19. The ALJ also gave "some weight" to the opinion from examining consultative evaluator Rebecca Billings, Ph.D., who opined that Plaintiff could follow simple instructions and perform simple tasks independently, would have moderate limitations in maintaining a regular schedule and making decisions, and would have marked limitations in maintaining attention and concertation, relating with others, and appropriately dealing with stress. Tr. 20. Plaintiff does not object to the ALJ's treatment of this opinion, which acknowledged that there was no evidence in the record demonstrating that Plaintiff would have marked limitations. The ALJ also gave "great weight" to the opinion from state agency psychological consultant G. Kleinerman, Psy.D., who opined that Plaintiff had some memory and interpersonal limitations. Tr. 19. These opinions are *consistent* with the RFC and with each other but *inconsistent* with MacRoy's opinion.

Because MacRoy's opinion is not entitled to controlling weight, the ALJ was not wrong to discount it as inconsistent with the rest of the evidence in the record. *See Torbicki v. Berryhill*, No. 17-CV-386(MAT), 2018 WL 3751290, at *4 (W.D.N.Y. Aug. 8, 2018) (ALJ properly afforded opinion of social worker "little weight" because she was not an acceptable medical source, she completed a check-box form in rendering her opinions, and her opinion conflicted with other medical evidence in the record).

**B.     The ALJ Did Not Err in Weighing Dr. Kleinerman's Non-Examining Opinion**

Plaintiff does not quarrel with the ALJ's treatment of most of this evidence, which supports the RFC. Rather, Plaintiff argues that the ALJ should not have given "controlling" weight to Dr. Kleinerman's opinion over the opinion from Plaintiff's treating social worker.

But Plaintiff's argument is based on an incorrect premise. Nowhere in the decision does the ALJ say that he gave *controlling* weight to Dr. Kleinerman's opinion. Rather, the RFC is based on a weighing of the treatment records and a careful analysis of the opinion evidence including both Dr. Kleinerman's opinion and MacRoy's opinions and treatment records. The RFC attempts to strike a balance between these records and need not correspond perfectly with any specific opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("[T]he ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision."). Moreover, courts recognize that when analyzing the record as a whole, the ALJ does not have to rely on one particular opinion, and may formulate an RFC without the benefit of a medical opinion. *See, e.g.*, *Monroe v. Comm'r of Soc. Sec*, 676 F. App'x 5, 9 (2d Cir. 2017) (summary order) (the ALJ properly discounted a medical source opinion based on, among other things, the inconsistency of the physician's opinion with his treatment notes, and relied on treatment notes and activities of daily living to formulate the RFC); *Tankisi v. Comm'r Soc. Sec*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (where "the record contains sufficient evidence from which an ALJ can assess . . . residual functional capacity,"

7

a medical source statement or formal medical opinion is not necessarily required); *Pellam*, 508 F. App'x 87, 90 (2d Cir. 2013) (upholding the ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes).  In addition, contrary to Plaintiff's argument, there is nothing that compels an ALJ to credit a non-acceptable treating source's opinion over non-examining or non-treating opinions when, as explained above, the treating opinion is inconsistent with the evidence in the record.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 9, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 14, is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.  The ALJ's decision is AFFIRMED.  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 10, 2021
       Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court